UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 25-cr-85 (CJN) |
| | ) | |
| ROBERT COOPER | ) | |


**ROBERT COOPER'S RESPONSE TO THE GOVERNMENT'S MOTION *IN LIMINE*
PROHIBITING MR. COOPER FROM PRESENTING EVIDENCE REGARDING TRUE
THREATS**

**BACKGROUND**

Robert Andrew Cooper faces two counts of violating 18 U.S.C. § 875(c) (Interstate

Communications with a Threat to Kidnap or Injure). ECF. No. 1. Section 875(c) punishes any

individual who transmits in interstate commerce "any communication containing any threat to

kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c).

The Government alleges that Mr. Cooper called the FBI and said that he "want[s] to kill

Christopher Wray." Later, while on the phone with a Task Force Officer, Mr. Cooper stated that

he "want[s] to kill [MPD Detective Shinton]." Mr. Cooper was indicted for these statements on

March 27, 2025.

Mr. Cooper, through counsel, moved to dismiss the case on September 15, 2025. The

Government filed the instant Motion In Limine on September 19, 2025. The Government also

replied to the Motion to Dismiss on September 26, 2025. Mr. Cooper moved to strike

Government's 404(b) notice on October 19, 2025, and the Government responded on October

24, 2025. At a pretrial conference on October 30, 2025, the Court ordered Mr. Cooper to reply to

the Government's Motion by November 3, 2025. Trial is currently scheduled for November 10,

2025.

**ARGUMENT**

**A. The Court Should Allow Mr. Cooper to Present Relevant Arguments and Evidence About His Mentality During the Alleged Conduct**

As an initial matter, the Government's motion conflates two distinct concepts: (1) whether Mr. Cooper **intended or was capable of carrying out** any threat (which is not an element of § 875(c)), and (2) whether Mr. Cooper **consciously disregarded a substantial and unjustifiable risk** that his words would be understood as true threats (which *is* an element under *Counterman v. Colorado*, 600 U.S. 66, 74 (2023)).

The defense does **not** intend to argue that Mr. Cooper lacked the intent or ability to carry out the alleged threats as a stand-alone theory of defense. Rather, Mr. Cooper seeks to introduce evidence regarding his **mental state, perception, and the surrounding context** to show that he did not subjectively understand his words to constitute true threats within the meaning of § 875(c). Such evidence directly addresses the mens rea element required by *Counterman* and is essential for the jury to consider in assessing whether the Government has met its burden.

Broadly speaking, "'[f]actual questions should not be resolved through motions in limine,' *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008) (citation omitted), nor is a motion in limine a 'vehicle for a party to ask the Court to weigh the sufficiency of the evidence,' *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008); *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013).\* This is precisely what the Government is attempting to do by its Motion in Limine, rather than "narrow the evidentiary issues" as they claim. *Government's Motion in Limine* at 2; *Barnes v. D.C.*, 924

F. Supp. 2d 74, 78–79 (D.D.C. 2013).* Seeking to resolve these issues prior to trial does not give jurors the opportunity to make factual decisions based on necessary evidence of the totality of Mr. Cooper's circumstances.

As the Government rightly posits, to convict Mr. Cooper of the two charged counts, they would need to prove beyond a reasonable doubt that: (1) Mr. Cooper transmitted a communication in interstate commerce; (2) the communication was a true threat; and (3) Mr. Cooper transmitted the communication in conscious disregard of a substantial and unjustifiable risk that the communication would be understood as a true threat. See 18 U.S.C. § 875(c). Each of these elements must be found to be present by the jury. The Government's Motion In Limine addresses the second element: the communication of a true threat.

True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." (*quoting Virginia v. Black*, 538 U.S. 343, 359 (2003)). *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). These expressions necessarily imply some kind of mental integration between the speaker's mind and his mouth. The Government must prove in true-threats cases "that the defendant had some understanding of his statements' threatening character." *Counterman*, 600 U.S. at 73.

This "understanding" standard has previously divided courts as to "whether the First Amendment requires proof of a defendant's subjective mindset," but was resolved and interpreted by the Court in *Counterman* to convey a "recklessness" mens rea standard.

Given the mens rea standard clearly present in the charges levied against him, Mr. Cooper must be allowed to show evidence of his state of mind to present a defense. Allowing

Mr. Cooper to present evidence of the mens rea element of his charge is essential to present a full

case to the jury in order for them to be fact-finders. Mr. Cooper intends to argue that his

statements were not true threats because no reasonable person could find them to constitute a

serious expression of an intent to commit an act of unlawful violence. In order to present this

theory to the jury, he must be allowed to offer evidence as to what a reasonable person—

someone making the statements or hearing them—would have thought. In fact, "[B]y reducing

an honest speaker's fear that he may accidentally [or erroneously] incur liability," a mens rea

requirement "provide[s] 'breathing room' for more valuable speech." *Alvarez*, 567 U.S. at 733,

132 S. Ct. 2537, 183 L. Ed. 2d 574 (Breyer, J., concurring in judgment). *Counterman*, 600 U.S.

at 75. It protects against a chilling effect by distinguishing speech that, "taken in context,

conveys a real possibility that violence will follow." *Watts*, 394 U.S. at 708. To be a true threat

outside of First Amendment protection, the speech at issue must be a "serious expression"

communicating a speaker's "intent to commit an act of unlawful violence to a particular

individual or group of individuals." *Black*, 538 U.S. at 359.

      The Government correctly cites that the Court emphasized in *Black* and subsequent cases

that while the speaker "need not actually intend to carry out the threat," and other courts have in

fact called it "irrelevant whether or not the Defendant had any intent to actually inflict harm upon

[the individuals] to whom he directed his communications." *Id.; United States v. Syring*, 522 F.

Supp. 2d 125, 129 n.5 (D.D.C. 2007).* The Government posits that this is reason enough for Mr.

Cooper to be prevented from showing any evidence for or against intent.

      However, the court in *Syring* goes on to cite *United States v. Stewart's* finding that

speech is a true threat if it "came in a context or under such circumstances wherein a reasonable

person would foresee that the statement would be interpreted by those to whom the maker

communicates a statement as a serious expression of an intention to inflict bodily harm upon or

take the life of another individual." 411 F.3d 825, 828 (7th Cir. 2005) (emphasis added). The

court thus conducts its analysis under the full context and circumstances, which can only be

understood with a full presentation of circumstances.

The court in *Syring* further elaborates on this invocation of context with the example of

*Watts v. United States*, in which a war protester allegedly threatened to kill the president at a

rally in Washington, D.C. 394 U.S. 705 (1969). Similarly to Mr. Cooper, "his counsel stressed

that Watts' statement was conditional upon an event that he said would never occur and that both

he and the crowd laughed after the statement was made." *Id.* at 707. The Court ruled for Mr.

Watts on the basis of context and intent, on the basis that "[t]aken in context, and regarding the

expressly conditional nature of the statement and the reaction of the listeners, we do not see how

it could be interpreted [as a true threat rather than political hyperbole]." *Id.* at 708.

Similarly, Mr. Cooper stresses that the full context and circumstances, including the mens

rea element of his intent and opportunity (or lack thereof), demonstrate that his statements could

not have been taken as anything but impossible hyperboles. There is an implied necessity of

some belief, either from Mr. Cooper or his supposed targets, that he could carry out "the

possibility [of] the threatened violence" and that this would genuinely cause them fear of

violence. *United States v. Syring*, 522 F. Supp. 2d 125, 129 (D.D.C. 2007) (quoting *Black*, 538

U.S. at 360). If "a prohibition on true threats protects individuals from the fear of violence and

from the disruption that fear engenders," there must be a reasonable (as calculated by someone's

mental process in the moment) possibility of action on those threats. *Black*, 538 U.S. at 359-360 (2003) (internal citations omitted).

It is a further violation of Mr. Cooper's First Amendment rights to prohibit him from offering relevant evidence to demonstrate his innocence by defending his First Amendment rights. Prosecution of speech at all, the Court has warned, has a cost: even as it lessens chill of protected speech, it makes prosecution of otherwise proscribable, and often dangerous, communications harder. And the balance between those two effects may play out differently in different contexts, as the next part of this opinion discusses. But the ban on an objective standard remains the same, lest true-threats prosecutions chill too much protected, non-threatening expression. *Counterman*, 600 U.S. at 78.

The *Syring* court concludes that "whether a communication is a true threat is generally a question of fact" because "courts have determined that alleged threats must be analyzed 'in light of [their] entire factual context,' and have specified factors to be considered, including: the reaction of the recipient of the threat and of other listeners; whether the threat was conditional; whether the threat was communicated directly to its victim; whether the maker of the threat had made similar statements to the victim in the past; and whether the victim had reason to believe the maker of the threat had a propensity to engage in violence." 522 F. Supp. 2d 125, 130 (internal citations omitted). This being the case, Mr. Cooper ought to be allowed to present all evidence that is probative to his case so that the jury can act as diligent fact-finders.

In short, excluding all discussion of Mr. Cooper's mindset and the surrounding context would effectively prevent the jury from assessing whether he possessed the subjective recklessness *Counterman* requires.

## **CONCLUSION**

For the foregoing reasons, and to preserve the interests of an impartial justice system, Mr.

Cooper respectfully requests that the Court deny the Government's Motion in Limine.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/ Alexis Gardner*
ALEXIS GARDNER
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500