# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|                         |     |                |
|-------------------------|-----|----------------|
| United States           | )   |                |
|                         | )   |                |
| v.                      | )   | No. 1:25-cr-85 |
|                         | )   |                |
| Robert Cooper,          | )   |                |
|                         | )   |                |
| Defendant.              | )   |                |

## MOTION FOR DETENTION HEARING

Defendant Robert Andrew Cooper moves the Court to set a detention hearing and ultimately set conditions of release. The Court has not yet held the detention hearing or made required findings under 18 U.S.C. § 3148 following the government's motion to revoke. Mr. Cooper contends that conditions exist that can assure his appearance at Court and the safety of the community. The pending competency proceedings are not a bar to release and, in fact, oppressive conditions of pretrial incarceration are the biggest threat to Mr. Cooper's ability to stand trial.

## BACKGROUND

Mr. Cooper is charged with two counts of threats under 18 U.S.C. § 875. On April 1, 2025 this Court entered an order setting conditions of release. ECF 7. In addition to standard conditions, the Court ordered him to have no contact with alleged victims, maintain mental health treatment, and stay away from certain FBI locations. *Id*. The Court did not order a third-party custodian or electronic monitoring,

On September 5, 2025, the government filed a motion to revoke Mr. Cooper's release. ECF 18. The motion alleged that Cooper attempted to trespass on a military base

and attempted to purchase a firearm.  *Id*. at 9-10.  The Court granted the motion the same

day it was filed.  ECF 18.  Mr. Cooper was arrested October 3 in the Northern District of

Florida.  1:25-mj-57.

On November 7, 2025 Mr. Cooper's attorneys filed a Motion for Competency

evaluation and hearing.  ECF 38.  The motion offered several observations about Mr.

Cooper's condition including that he "appears to have significantly decompensated during

his recent incarceration."  *Id*. at 1.  On November 13 the Court ordered a competency

examination by the Department of Behavioral Health.  ECF 42.  Mr. Cooper has been in

D.C. Jail since November 7.

## ARGUMENT

### I.    Conditions Exist Which Can Assure the Safety of the Community and Mr. Cooper's Appearance at Court

18 U.S.C. § 3148(b) allows the Court to revoke a defendant's release and order

detention if, after a hearing, the judicial officer finds, among other things, that there is "no

condition or combination of conditions of release that will assure the person will not flee

or pose a danger to the safety of any other person or the community" or that "the person is

unlikely to abide by any condition or combination of conditions of release."  *See also*,

*United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. 2021)("In our society liberty is the

norm, and detention prior to trial or without trial is the carefully limited

exception.")(*quoting United States v. Salerno*, 481 U.S. 739, 755 (1987)).

When the government filed its September 5 Motion to Revoke the defendant's

release, the Court entered a "minute order" the same day stating "The [ECF 18] Motion for

Revocation of Defendant's Release and Request that the Court Issue a Bench Warrant is

GRANTED."   Dkt. 9/5/25.  When Mr. Cooper next came before the court on November

7, the docket reflects a "Minute Entry" stating, among other things, "Bond Status of Defendant: Defendant Committed/Commitment Issued." Dkt. 11/7/25. There is no written order or any other indication that the Court made findings to justify Cooper's continued detention.[1] To the extent no findings were made, Mr. Cooper is not validly detained and should be released.

In any case, there are conditions that can assure the safety of the community and Mr. Cooper's appearance at Court. Even taking the allegations in the government's motion to revoke as true for argument's sake, there is not even an accusation that Cooper attempted to harm anyone or even that he committed most of the technical violations the government alleges. For example, Mr. Cooper did not "attempt" to "trespass" at the Patuxent River Naval Air Station. Civilians are not categorically barred from military bases. There is no allegation that he disobeyed a lawful order from Patuxent security. The Patuxent website acknowledges that "[e]ntering NAX Patuxent River can be confusing for first time visitors."[2] The golf course is also open to civilians if they have a pass.[3] The government's motion states that "Cooper told NAS patrol personnel that he was attempted to get a pass to go golfing on base." ECF 18 at 9. The government states that Cooper voluntarily told security that he had knives and ammo in his vehicle. The government does not allege that Cooper protested when "NAS Patrol denied Cooper base access." *Id*. Mr. Cooper's conditions of release required that he not "possess a firearm, destructive device, or other

---

[1] Undersigned counsel has ordered the transcript of the proceedings to be sure but it has not yet been delivered.
[2] https://ndw.cnic.navy.mil/Installations/NAS-Patuxent-River/About/Visitor-Information/Base-Access/ (last visited December 11, 2025)
[3] https://www.navyregionmwrndw.com/programs/d52adbcd-e77b-4ee4-80ff-e8c9cdd9bfb0#:~:text=The%20picturesque%20Cedar%20Point%20Golf,project%20was%20completed%20in%202014. (last visited December 11, 2025).

weapon." No condition prohibited possession of ammunition and a "knife" is not *per se* a weapon.

As to the September 2, 2025 "attempted firearm purchase", the government does not allege that Cooper had a plan to use the firearm in a way that would "pose a danger to any other person or the safety of the community." Under 18 U.S.C. § 3148 proof that a defendant violated a condition of relief is not sufficient by itself to justify detention.

To the extent that any of the government's allegations raise safety or flight concerns, conditions of release exist that can mitigate those concerns. As stated above, the Court has never required that Mr. Cooper submit to electronic monitoring or the supervision of a third-party custodian. Imposing those conditions is feasible and would mitigate release concerns. The residence in Falls Church, Virginia which Mr. Cooper previously verified with pretrial services is still available to him. Undersigned counsel has been in contact with a close acquaintance of Cooper who would be an excellent third party custodian (no criminal history, frequent contact with Cooper, willingness to assume the role, etc.). Undersigned counsel can have the potential third party custodian "screened" by pretrial services in advance of any hearing. Undersigned counsel requests to be heard at a detention hearing to expand at greater length on the alleged violations of conditions of release and the proposed new conditions.

## II.    Competency Proceedings are Not a Bar to Setting Conditions of Release

This Court's November 13, 2025 order states that "pursuant to 18 U.S.C. § 4241[] Defendant Robert Cooper be examined by the psychological or psychiatric staff of the D.C. Department of Behavioral Health, Pretrial and Assessment Branch (DBH) for the purpose of a forensic screening for a preliminary assessment of Defendant's competency." ECF

42.

§ 4241 states that the court may order "a psychiatric or psychological examination of the defendant be conducted…pursuant to the provisions of section 4247(b) and (c)."  § 4247 (b) states "[f]or the purposes of an examination pursuant to an order under section 4241…the court *may* commit the person to be examined for a reasonable period" (italics added).  Detention during the "preliminary assessment" phase is therefore not mandatory.

Commitment of an allegedly incompetent defendant "to the custody of the Attorney General" can only happen if the Court finds after a hearing that the defendant "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  § 4241(d).  The Court has not yet reached this point.

On November 24, 2024, DBH submitted a report concluding Mr. Cooper was incompetent to stand trial.  Ex. 1 (to be submitted separately to chambers).  However, despite the conclusions in the report, undersigned counsel does <u>not</u> concede that Mr. Cooper is incompetent.  While Mr. Cooper certainly does tend to talk at length about his many unusual opinions, he absolutely can be redirected to focus on his case with the proper techniques.  Moreover, the report failed to address many of the most basic questions that should be included in any competency evaluation such as whether the defendant understands what his charges are; can explain the roles of the jury, judge prosecutor and defense lawyer; whether the defendant can explain the difference between pleading guilty and having a trial; and other similar questions.

Mr. Cooper will explain further what steps he suggests that the Court should take regarding competency in the status report due to the Court on December 12.  The bottom

line for purposes of detention is that it should not be taken as a foregone conclusion that Mr. Cooper will be committed to the custody of the Attorney General. The Court should therefore schedule a hearing on detention while the competency proceedings are ongoing.

In fact, Mr. Cooper's pretrial incarceration is, without question, the single biggest threat to his competency to stand trial. Mr. Cooper reports he is currently being held in isolation in the "South 3" unit of DC jail, likely due to his age and mental health needs. Such conditions of confinement are extremely damaging to those suffering from mental health illness. *See*, *e.g.*, *Madrid v. Gomez*, 889 F.Supp. 1146, 1265 (N.D. California 1995)(holding inmates with mental health conditions in isolation is "the mental equivalent of putting an asthmatic in a place with little air to breathe."). Mr. Cooper reports that the mental and physical medical treatment in the jail is not adequate to his needs. Mr. Cooper's prior counsel (who interacted with him while on pretrial release) stated that "[Mr. Cooper] appears to have significantly decompensated during his recent incarceration." ECF 38 at 1 (filed November 7, 2025). As stated above, undersigned counsel contends that Cooper is currently competent to stand trial, that may not remain the case if his mental condition deteriorates over time.

If Mr. Cooper is released, his mental health will surely improve. Undersigned counsel has been in touch with Mr. Cooper's psychiatrist Dr. Robert Keisling about Mr. Cooper's needs and programs that can help him. Mr. Cooper is willing to comply with any treatment ordered by pretrial services.

## CONCLUSION

For the foregoing reasons, Mr. Cooper requests the Court to schedule a detention hearing and ultimately to set reasonable conditions of release.

Respectfully Submitted,

By:


/s/ Charles Burnham
Charles Burnham, DC # 1003464
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1634 I St. NW, Suite 373
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com