IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| United States | ) ) ) | |
| v. | ) ) | No. 1:25-cr-85 |
| Robert Cooper, | ) ) ) ) | |
| Defendant. | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DETENTION HEARING**

Mr. Cooper's motion for detention hearing requested the Court to release a 69-year-old man who clearly suffers from serious mental health conditions. Mr. Cooper argued there was no basis to conclude he is a threat to harm anyone. The defense urges this Court to make the commonsense conclusion that bizarre statements from Cooper such as that former FBI director Christopher Wray "directs people to eat babies" or that former First Lady Hillary Clinton is a rapist, are symptoms of mental illness rather than expressions of an intent to do harm.

In response, the government urges this Court not only to find that that Cooper's statements are legitimate threats but also that Cooper "made efforts to carry out his threats." Resp. at 5. For the reasons set forth below, there is no logical basis to make this finding and Cooper is not otherwise detainable. This Court should conclude that conditions exist that can assure the safety of the community against any perceived threat from Mr. Cooper.

**ARGUMENT**

**I. Mr. Cooper did not take Steps to Carry Out His Alleged Threats**

The government argues that Mr. Cooper presents a danger to the community because

he took "steps consist with an intent to carry through" and "efforts to carry out" alleged threats to kill former FBI director Wray and MPD detective Shinton. Resp. at 18, 5. The government's argument is highly implausible for several reasons.

First, the government nowhere explains why, if Cooper truly intended to assassinate members of law enforcement, he would call the FBI to notify them ahead of time. As the government's motion recites, Cooper not only called an FBI tipline to warn them that Wray's life might be in danger (from others), but then proceeded to give the FBI updates on his movements right up until the moment he was arrested. Resp. at 2-5.

Second, the government's claim that Cooper's phone history shows "efforts to carry out his threats" does not withstand scrutiny. Resp. at 5. The phone content simply does not permit that interpretation. The government claims an internet search Cooper did on December 13, 2024, for "tour of FBI headquarters" is evidence that Cooper truly meant to kill Wray. The government mentions the "tour" search no less than three times (Resp. at 1, 7, 17) but nowhere explains how Cooper might have intended to carry out a murder plot by signing up for a public tour of the Hoover building. Even a person suffering from mental illness would surely appreciate that any "tour" of the Hoover building would involve a security screening.

Perhaps anticipating this problem with their interpretation of Cooper's search history, the government also argues that "Cooper traveled to Georgia – the state where former Director Wray is known to have a residence – and actually entered a gun store and completed the paperwork." Resp. at 17. The government claims this "dovetails" with concerns about his statements to the FBI. *Id*. at 22. However, the government fails to mention the seemingly relevant fact that Cooper had an innocent (and much more

2

plausible) reason to be in Georgia, namely his family and personal connections to the state. For example, the pretrial report states that Cooper was on probation in Georgia in 2010 and the government's response itself mentions in passing that Cooper's son "lives in Georgia." Resp. at 9.

In sum, it is certainly true that Cooper, like many persons suffering from mental health issues, often makes extreme statements. However, the government's allegation that he took steps to carry out some violent plan is not supported by evidence or logic.

## II. The Government Overstates the Strength of the Evidence

The government also states that the weight of the evidence "strongly weighs in favor of detention." Resp. at 18. The government argues that "the evidence of Cooper's threatening statements is substantial and largely not in dispute." *Id*. at 19.

However, as the government acknowledged in previous filings, to obtain a conviction it must prove Cooper made a statement that is "a serious expression of intent to inflict bodily harm on a particular person that a reasonable observer would perceive to be an authentic threat." ECF 29-3 at 6 (List of Proposed Jury Instructions). In deciding whether the government can meet this burden, the jury will be entitled to consider all relevant circumstances including that Cooper himself called the FBI and provided his information, and other statements made by Cooper such as those describing his comments about Wray as "mental masturbation. Verbal masturbation." After it has heard the full evidence (not just scary sounding quotes), a reasonable jury is likely to conclude that the government cannot prove beyond a reasonable doubt that Cooper's statements were "authentic threats." Mr. Cooper has meritorious legal defenses as well. *See*, *e.g*., ECF 20 (Motion to Dismiss Indictment on First Amendment Grounds).

Mr. Cooper disputes that the government's evidence "strongly weighs in favor of detention."

### III. There is Not Evidence Sufficient to Find that Mr. Cooper is Unlikely to Abide by Any Condition or Combination of Conditions of Release

#### a. Legal Standard

The government argues that, as an alternative to the § 3142(g) factors, it can justify detention by showing that Cooper "is unlikely to abide by any condition or combination of conditions of release." Resp. at 13. The government argues that the burden of proof is preponderance-of-the-evidence, relying on *United States v. Edelman*, 2024 WL 5093496 (D.D.C. Dec. 12, 2024). The government admits that the DC Circuit has not established preponderance of the evidence as the correct standard. *Edelman* is not strong authority because, as Judge Kotelly stated, the defendant was not arguing for a higher standard. *Id*. at *4 ("neither party addresses the issue.").

Mr. Cooper urges this Court to a apply a "clear and convincing standard." The only standards of proof mentioned in the detention statutes are "clear and convincing evidence" (§ 3142(f)(2)(B); § 3148(b)(1)(B) and "probable cause" (§ 3142(b)(1)(A)). The statutes do not mention "preponderance" as the correct standard for any aspect of the pretrial detention process. If Congress had intended for people to be detained based on simple preponderance findings, it would certainly have said so.

Moreover, detaining people who are not a danger or a flight risk based on a mere preponderance finding that they are "unlikely" to abide by conditions of release would greatly expand pretrial detention. It could easily be used to justify the detention of large numbers of mentally ill persons. The government will often be able to make superficially plausible arguments that such persons are "unlikely" to follow conditions due to their

4

mental limitations, even if they are not dangerous. The result will be jails even more overcrowded than they already are with the mentally ill – whose conditions, like Cooper's, will be further aggravated by carceral conditions. Congress would not have intended this result and Mr. Cooper contends that it would be inconsistent Eighth Amendment.

### b. The Government Has Not Proven That Cooper is Unlikely to Follow the Court's Conditions of Release

Whatever standard is applied, there is no basis to find that Cooper is unlikely to follow conditions of release. The government argues that this Court should find that Cooper is unlikely to follow his conditions because he has previous violations and because DBH found him incompetent. As to the first argument, the fact that Cooper has violated conditions of release is not sufficient by itself to find that he is unlikely to follow them in the future. If that was the case then every violation of supervised release would result in detention, which is clearly not what the statute intends.

As to the second argument, the government states that "[g]iven that Cooper has been found incompetent by a mental health professional, the Court cannot be assured that Cooper will be able to understand, agree to, and abide by any proposed conditions of release." Resp. at 22. This argument is insufficient for at least two reasons. First, Mr. Cooper is disputing the findings in the DBH report, as explained in the parties' Joint Status Report on competency. ECF 46. Second, the government conflates incompetence to stand trial with inability to follow pretrial conditions. No court has ever held that defendants who are incompetent to stand trial are also incompetent to follow conditions of release, and in fact no court has ever introduced even the concept of a defendant being legally "incompetent" to follow conditions of release. To be competent to stand trial, a defendant must be able to understand his charges, assist his lawyer, and make decision about things

5

like how to plead. In order to enter pretrial release, a defendant need only follow the Court's instructions, which is a much simpler task.

To the extent there is any concern, it can be mitigated by additional conditions. As suggested in the original motion, the Court can require Mr. Cooper to abide by electronic monitoring. This will greatly reduce the opportunities for violations because he will not be out and about, possibly being tempted by unwise ideas like going golfing on a Naval base. The Court can also appoint a third-party custodian who can check in on Cooper by phone daily and in person weekly to remind him of his obligations to the Court.

## CONCLUSION

For the foregoing reasons, Mr. Cooper asks the Court to set reasonable conditions of release.

Respectfully Submitted,

By:

/s/ Charles Burnham
Charles Burnham, DC # 1003464
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1634 I St. NW, Suite 373
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com