IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States | ) |
| | ) |
| v. | ) No. 1:25-cr-85 |
| | ) |
| Robert Cooper, | ) |
| | ) |
| Defendant. | ) |

**MOTION TO DISMISS**

Mr. Cooper hereby moves to dismiss the charges against him for violation of his Due Process rights. As the Court recalls, Mr. Cooper has previously been found incompetent by the Department of Behavioral Health and requested time to consider submitting his own expert report. Mr. Cooper will not be submitting an expert report.

Mr. Cooper contends that, for the reasons set forth below, this Court should dismiss the charges against him because his liberty interest outweighs the government's interest in restoring him to competency for the purposes of prosecuting him for these offenses.

**BACKGROUND**

Mr. Cooper is charged with two counts of use of interstate communications to make a threat to kidnap or injury under 18 U.S.C. § 875(c). That statute states that:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injury the person of another, shall be fined under this title or imprisoned not more than five years, or both.

The government alleges Cooper violated this statute by making threats on the telephone against a former FBI director and an MPD detective. As the Court is aware from previous proceedings and filings, Mr. Cooper has a history of mental illness, eccentric behavior, and

nuisance offenses.

Prior counsel filed a Motion for Psychiatric Exam and Competency Hearing on November 7. ECF 38. The Department of Behavior Health evaluated Mr. Cooper on November 17 an wrote a report dated November 24 finding him incompetent. New counsel stated to the Court during a December 18 status hearing that he would be seeking a second opinion on competency using a privately retained expert. Undersigned counsel will not be submitting a competency report and is prepared to proceed immediately to a competency hearing if the Court does not grant this motion.

Mr. Cooper has been detained since September. He will turn 70 this November and his health is poor. According to DC Jail records, he suffers from "Bipolar II Disorder Axis I, Hypertension (uncontrolled). He refused anti hypertension medication necessary to prevent a stroke because he did not believe the prison medical staff were real doctors. On November 13, 2025 his blood pressure was recorded at 153/94. According to the American Heart Association and the American College of Cardiology, 153/94 is "stage 2" hypertension as to both the systolic and diastolic numbers.

**ARGUMENT**

I. **Due Process and the Statutory Scheme**

In *Jackson v. Indiana*, the Supreme Court held that it violates Due Process indefinitely to confine persons who are incompetent to stand trial. 406 U.S. 715 (1972). Congress implemented this Due Process guarantee by passing 18 U.S.C § 4241. The statue allows any party or the Court to raise competency. § 4241(a). The court must grant the motion if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he

2

is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense. *Id*.

The court is then required conduct a competency hearing and, if the court finds by a preponderance of the evidence that the defendant is incompetent, must commit the defendant to the custody of the Attorney General. § 4241(d). The Attorney General shall hospitalize the defendant for treatment for a period not to exceed four months to determine whether there is substantial probability in the foreseeable future that the defendant will become competent. If, after the four months, a court finds that there is a "substantial probability" that the defendant can become competent, the Court can commit the defendant for an additional "reasonable period." *Id*.

## II.     Committing Mr. Cooper to the Custody of the Attorney General Would Violate Due Process

Mr. Cooper moves to dismiss the charges against him for violation of his due process rights as applied to the facts of his case. The government has effectively acknowledged through its plea posture that Mr. Cooper's charges are not aggravated, so the government's interest in prosecuting him is clearly outweighed by the indefinite detention that awaits Mr. Cooper if he enters the statutory "competency restoration" process.

Courts have repeatedly described the due process analysis for incompetent persons as a balancing test between the defendant's liberty interest and the government's interest in prosecuting him. For example, in *United States v. Brennan*, the Second Circuit considered a due process challenge to a commitment for competency restoration under 18 U.S.C. § 4241(d) from a defendant charged with failing to register as a sex offender. 928 F.3d 210 (2d Cir. 2019). The court stated that it would have to "consider how the government's interest must be balanced with Brennan's interests." *Id*. at 214. The Court

3

held that, even though it appeared unlikely that Brennan could be restored to competence, his commitment for competency restoration was constitutional. Notably, the court relied heavily and the repellant nature of the defendant's offense – "lewd molestation of an elderly or disabled person in the third degree." *Id*. at 212.

Other cases, like *Brennan*, have also described the government's interest restoring an incompetent defendant as tied to the seriousness of the offense the defendant is charged with. *Sell v. United States*, 539 U.S. 166 (2003)("The Government's interest in bringing to trial and individual accused of a *serious* crime is important)(italics added). *United States v. Brooks*, 749 F.3d 1090, 1097 (9th Cir. 2014)("the penalty for which the defendant could be liable if convicted is a relevant factor"); *R.B. v. State*, 533 P.3d 542, 543 (Alaska 2023)("[T]he government has a legitimate interest in bringing an accused to trial, and this interest becomes stronger the more serious the degree of crime.").

Here, the best indication of the strength of the government's interest in bringing Mr. Cooper to trial is the plea offer the government placed on the record at the November 7, 2025 hearing. The plea is the best indicator of the government's interest because it represents the government's own estimation of the seriousness of Cooper's allege conduct. Counsel for the government described the plea offer as follows:

> The plea offer that was extended yesterday, I just want to state it for the record, it was a plea to two counts of attempted threats under the D.C. code 22 Section – I'm sorry – 22 D.C. Code, Sections 407 and 1803; that's two counts. And that would be in resolution of the charges of the Indictment.

Ex. 1 at 15.

D.C. Code § 22-407 carries "not more than 6 months" in prison. Where the conviction is for "attempted threats", as the government stated, the penalty is "not more than 180 days." D.C. Code § 22-1803. Because giving consecutive sentences for offenses

4

that are part of the same course of conduct would be very unusual, we may consider the government's offer as effectively having a 180-day maximum sentence. In deciding to make such an offer, the government presumably undertook its own § 3553 analysis of the proper sentence for this case. The government's ultimate sentencing allocution if Mr. Cooper is convicted of his current charges therefore should not be dramatically different than the sentence contemplated by the misdemeanor plea offer. The Due Process analysis Mr. Cooper is proposing in this motion therefore need not get sidetracked by an irrelevant discussion of whether Cooper would accept this plea if restored to competence, or whether the government would reoffer it.

Significantly, Cooper has already served almost the maximum sentence he could get under the plea offer. Mr. Cooper was arrested on February 19, 2025, and charged in Superior Court (2025 CMD 1743) and then charged in Federal Court on April 1. Both courts set conditions of release, but Cooper was arrested on a federal bench warrant sometime in September 2025. He has been in custody since then. *United States v. Cooper*, 1:25-mj-57 (N.D. Fl.). He has served approximately four months in custody.

Under the competency statute, if found incompetent, Mr. Cooper will be committed to the custody of the Attorney General for competency restoration for up to four months. Practically speaking, the commitment is almost never shorter than four months. In fact, the government has a track record of illegally holding defendants past the fourt months. *United States v. Gamarra*, 308 F.Supp.3d 230, 231 (D.D.C. 2018)("Gamarra's motion states that he has been committed to the custody of the Bureau of Prisons and hospitalized for a competency evaluation well beyond the initial four-month period authorized by statute. The government does not dispute this fact.")(internal citations omitted); *United*

5

States v. Carter, 583 F.Supp.3d 94, 95 (D.D.C. 2022)("Since August 30, 2021, this Court has repeatedly informed the government that it lacks the authority to extend that four-month period. Despite the Court's warnings, the government has not complied with IDRA's deadline.").

If Mr. Cooper is committed for competency restoration, it is a virtual certainty that he will serve more time than his eventual sentence. This is true just based on the initial four-month commitment, but the truth is that Mr. Cooper's incarceration could easily extend for years, as has happened in other cases. At nearly 70 years old, Mr. Cooper is at a stage in life where is mental acuity will naturally begin to decline somewhat as time passes. Moreover, according to Dr. Grant's report, Mr. Cooper is medication resistant, so it is unclear exactly what treatment the Attorney General is expected to secure for him. Using physical force to make Mr. Cooper take his meds requires an order from this Court that is immediately appealable. In short, there appears to be little prospect of a timely restoration of Cooper to competence. The Court should therefore hold that committing him would violate due process because the government's interest in bringing him to trial cannot justify such a lengthy detention for competency purposes.

**III.    Speedy Trial**

The speedy trial act automatically excludes time spent restoring a defendant to competency. 18 U.S.C. § 3161(h)(1)(A)(excluding "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant"). However, a defendant's constitutional speedy trial rights can be violated even if the time is statutorily excluded based on the speedy trial factors from Barker v. Wingo:1) length of delay, 2) reason for the delay, 3) defendant's assertion of the right, and

6

4) prejudice. 407 U.S. 514 (1972); *see also*, *United States v. Hensley*, 1:18-cr-270-RMM, #11 ("the Court's prior conclusion that the Speedy Trial Act was tolled due to the pending pretrial detention motion and the competency proceedings does not foreclose a finding that Mr. Hensley's constitutional speedy trial right was violated.").

Although a request to dismiss his case for speedy trial is perhaps premature at this point, committing Mr. Cooper for competency restoration will be setting this case on a collision course with Mr. Cooper's speedy rights. *See*, *e.g.*, *United States v. Frank Chatmon*, 1:10-cr-477 (4th Cir.)(5 years from arrest to final judgment in the "rocket docket" with two interlocutory appeals on forced medication); *United States v. Weston*, 1:98-cr-357 (D.D.C.)(8 years of competency litigation); *Hensley*, *supra* (dismissing case for constitutional speedy trial violation)..

Mr. Cooper hereby advises the Court that he is asserting his constitutional speedy trial rights to their <u>fullest extent</u>.

## CONCLUSION

For the foregoing reasons Mr. Cooper asks this Court to dismiss the indictment against him for violation of his due process rights.

7

Respectfully Submitted,

By:

/s/ Charles Burnham
Charles Burnham, DC # 1003464
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1634 I St. NW, Suite 373
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com